Our first case this morning is Arlington Industries v. Bridgeport. Ms. Kloon. You may proceed. Thank you, Your Honor. Good afternoon. May it please the Court. My name is Catherine Kloon, and along with my co-counsel, Carter Phillips, we represent the appellant in this case. We're here today, Your Honors, because the District Court fundamentally misconstrued the scope of the patents in this case by misinterpreting a straightforward term, spring metal adapter, as requiring a split ring so that the diameter would easily change, as opposed to its ordinary meaning, an adapter made of spring metal. The District Court's construction is not supported by the intrinsic record in this case because nothing in the claims, the specification, or the prosecution history so restricts the claims in that manner. Specification shows the number of figures. All of them have a split ring. That is correct, Your Honor, but this Court has said time and time again that even if the specification only disclosed one embodiment, the claims are not limited to the figures or the one embodiment. But more importantly in this case, it's only the figures that all show a split ring. In describing the invention in the specification, there is actually only seven lines in the entire specification that describe the adapter as being split, and that is the description of the preferred embodiment. So while there are four... How many lines define it as not being split? Well, there's no actual number, Your Honor, but what's important about that is... Wait, no actual number or the number is zero? How many lines in here suggest that they can have an embodiment that doesn't have a split? Oh, there's very much support in the specification that the adapter does not have to be split. Okay, show me. Well, first of all, the originally filed claims of the 164 patent are part... No, I'm talking about the specification. So show me... Your statement to me was there's a lot of support in this specification disclosing an embodiment that doesn't have a split. So show me by column and line number where that support is. Well, first, what I was getting to about the original filed claims, originally filed claims one and two of the 164 are actually part of the specification because the 050 is actually a continuation. So those claims actually become part of the specification, and Arlington is entitled to rely on those particular claims. And that is undisputed that those claims did cover both a split and a non-split ring. Number two, there is 72 instances in the specification that use the term spring steel adapter. In none of those claims except for one in the preferred embodiment, does it describe the spring steel adapter as actually being split? It's actually the first embodiment, right? The preferred one's the fourth. I stand corrected. You're right. It is the first one that they're describing, not the fourth. It's the first embodiment that has at line 20 the not forming a complete circle. It doesn't even call it split, but it says not a complete circle. And that's the first one that prefers the fourth, right? That is correct. But the other embodiments also have an incomplete circle, second embodiment and the third embodiment. They're not described as having a less than a complete circle though, Your Honor, actually. In other words, everyone in the specification. That is correct. None of the other embodiments are described as having a less than a complete circle. So you have three that are not, in words at least, described as having less than a complete circle. And you have one that is described that way. You would kind of presume it would have described the other three that way if that's what is meant, right? That is correct, actually, Your Honor. We do not dispute that the figures all have an incomplete circle and that the embodiments are referring to those figures. However, there is absolutely no discussion throughout the specification that discusses the fact that the split is an essential component of the invention or that it's one of the objectives or the advantages. Show us in the specification, as Judge Moore was asking, where is there any description of an embodiment that does not have an incomplete circle? We would submit that the use of the term spring steel adapter without the additional feature less than a complete circle is a description to those skilled in the art because it was known that, in fact, the prior art of Wrecker was known in the art and those skilled in the art are presumed to know the prior art. It was very well known that adapters could be split or unsplit. So when the use of the term spring metal adapter is being used, it is covering both a split and an unsplit ring. And only when the additional feature of less than a complete circle is added to that particular limitation is the spring metal adapter so limited. Do you want to tell us a little bit about the 831 patent? Yes, the 831 is exactly the same, Your Honor, in the fact that the 831 has only one embodiment that is described as having a, quote, expandable slot. Now the 831 did incorporate the 106 patent, which is a child also of the 164 patent. So we would submit that the specification and the claims of the 164 are also very relevant. We think when you're looking at, we're talking here about the specification, but we think it's very important in this case, as this claim construction analysis begins with the words of the claim. So before we jump to the specification, I think it's very important to look at the fact that it was a very expressive use by the patentee that when the adapter is intended to be split, they use an additional language being less than a complete circle or they use the language, quote, split ring to indicate that the adapter must be split. And when you look at how the district court's claim construction would be applied in this case to the 164 patent claims, those claims, two of which already use the word split ring, it shows really the absurdity of this construction. Now the way claims 12 and 13 would be read, it would say a split, split circular spring metal adapter. And this court has said time and again that the preference for claim construction is to give meaning to each and every term used in all of the claims. The district court and Bridgeport failed to even acknowledge the fact that all 15 claims of the 164 patent already had either a split limitation or a being less than a complete circle limitation. So this particular construction makes language in every single claim of the 164 superfluous, which goes against this court's precedent. Number two, the 050 patent is a direct continuation of the 164 patent. And as this court held in Saunders, when you have a parent application that has a split or a being less than complete circle limitation in every single claim, and you have a direct continuation in only some but not all of the claims have that limitation, it's a very strong indication that the claims that do not include that limitation are not so limited. Why are we looking at only one case instead of two? That's a good question, Your Honor. What happened in this case is there was two parallel proceedings. I know, Judge Connor and Judge Caputo. Why don't we have the Connor case before us? You do. It stayed right now pending the outcome of this claim construction because this case will resolve a number of the issues in that case because that was a jury trial and there was a number of other issues other than claim construction. And it was actually quite far behind this case. So that's why the parties actually jointly moved to stay that case for the convenience of the court. Now, looking back again at these courts, at the claims, the differences amongst the claims are particularly important in this case because not only again was split ring already used, but the less than a complete circle limitation was particularly used in the one through six of the 050 and it was not used whatsoever in the 831. So here we have a situation where we have 29 claims. The 831 patent has a totally different specification. That is correct, Your Honor. But the claims themselves with respect to the spring metal adapter disclosure, it doesn't actually contain its own disclosure. It actually relies on the 164 patent through the 106. So rather than actually having its own disclosure for everything to do with the outer adapter, it relies on the 164, which is the same specification as the 050. Now, one of the things that the district court was, you know, erred in, if you look at his analysis, he failed to even take into consideration whatsoever the words of the claims. The only claims that he compared was claim one to claim eight of the 050 patent. Why wouldn't the doctrine of equivalence as a matter of almost definition be factual and left open? It would, Your Honor. There's absolutely no question that the district court erred on the doctrine of equivalence, that there was a dispute on whether or not the accused products functioned in the same way. He actually agreed with Arlington that they did achieve the same results and that they had the same function. And the only dispute was on the way prong, which we believe we had submitted significant amount of evidence that there was a disputed fact. But because of this case has the claim construction issue that applies also to the Judge Connor case, we think it's very important that this court looks to the claim construction and does not resolve this issue solely on summary judgment. While we believe that this court could easily throw this out on a factual issue, we want the court to really look and compare the two claim constructions issued by Judge Connor and Judge Caputo because we would submit that Judge Connor's is much more clearly reasoned in following these court's directives in their claim construction methodology cases. Now with respect to the specification section, really don't believe there's really any dispute that Judge Caputo was importing a limitation. He himself acknowledged that the claims did not include the split limitation. And he pointed out there was only one sentence in the specification that he found intriguing. He actually even rejected Bridgeport's arguments based on the figures themselves and said that Phillips and other cases in this court's methodology had told that he should not limit the claim construction to the preferred embodiments of the figures. But instead, he ended up doing exactly that because he got focused on one and only one sentence in the specification that talked about springing inward and springing outward. And then he said without the split, there would be no springing inward and springing outward. And we would submit that again, that is the district court limiting himself to one embodiment and one description. And by no means does it rise to the standard of defining a term by implication as this court has held. That would have to be a situation where there was a repeated and consistent and exclusive usage of a term. In contrast, the very sentence that he relies upon. That's with regard to just one embodiment too, right? That is correct, Your Honor. Do you want to save your rebuttal time, Ms. Kloon? Yes, Your Honor, I would. Thank you. Ms. Maynard. Thank you, Chief Judge. May it please the court, my name is Deanne Maynard and I represent Appalee Bridgeport Fittings. The district court correctly interpreted the claims spring metal adapter. Which district court? In this case, Judge Caputo correctly interpreted the claims spring metal adapter and spring spiel adapter. Show me any language in the claim which supports your reading. The claim language that the court's interpreting is spring metal adapter. Yeah, but where is there anything in this claim that says it's less than a full circle or that it's a split circle somehow? As a matter of fact, it says it's circular, which I would presume means it's a circle, not something that's less than a circle. Well, we have a debate about the meaning of circular, Your Honor, as well. Well, but circular has a pretty clear meaning and I don't see anything in the claim that supports your reading. This court's made clear that the claims are interpreted in light of the teachings Well, but we don't import limitations out of the specification. We have to have something in the claim that indicates the way it should be interpreted and then we'll go to the specification. But if there's nothing in the claim, we're not going to import a limitation. Well, the word spring metal adapter in this context, the word spring That means made of spring steel. We see 72 instances in the specification where it talks about spring metal adapters. But, of course, that's all we have here. We don't have something less than a circle here, do we? The word spring is interpreted, is used in the language of the claims, Your Honor, to encompass an opening up. The difficult thing with that is why wouldn't the claim language be redundant if we were to construe it the way you're suggesting? The limitation says, said circular spring metal adapter being less than a complete circle. If the word spring itself meant split, then the less than the complete circle language is totally superfluous. Well, that limitation obviously has more to it than just the less than a complete circle, Your Honor. And I think if you're looking at the claims broader, the context of the claims, in claim 7, which only says circular spring metal adapter, it's clear from claim 7, and the inventor admits it, that it would not operate unless it were completely split. And nothing in the teachings, and it is not just a preferred embodiment that shows that the circular adapter must be split. If it wouldn't operate if it weren't completely split, wouldn't that be an issue of validity, but not one of claim construction? Well, this Court's cases teach that you interpret the claim language so that it would be enabled. And when you look at it in light of the teachings of the specification, all of the embodiments in the specification show that it's split. None of the embodiments of either patent show less than a complete split. And I disagree with my colleague. There are places elsewhere, besides the seven lines to which she refers, that indicate that it is less than a complete circle. I just want to make sure I understand your argument. The words spring metal adapter, you believe those words, standing on their own, that the use of the word spring is what a synonym for split in the context of this patent. I think it's those words that the Court is trying to interpret in light of the teachings of the specification, the prosecution history, and the extrinsic evidence. But time and again it says in the specification, let's just take column three, lines seven through ten, very close to where you're referring to, talks about the spring steel adapter, meaning the adapter is made of spring steel. They talk about the thickness of that steel, and they say it's formed from spring steel. There isn't any ambiguity on that at all. On your interpretation, we've got the ambiguity of claim differentiation, prosecution history. There's no ambiguity on the steel is spring steel. Even if one thinks about it as, what's the adapter that is the invention here, and that what you're trying to understand is what the adapter is, the teachings in the specification show that the adapter Arlington invented is completely split. And it does that in multiple places, not just in the line seven. The clearest place is in column three, line 20, the circular metal spring adapter has an opening that results from not forming a complete circle. But that is not an embodiment. To be sure, it's in the description of the first embodiment, but the different embodiments are all about different numbers and locations of the tangs. And I submit, Your Honor, the reason it thereafter says spring steel adapter 20 is that it's referring back to that definition of spring steel adapter, which is split. And there are other places, there are at least... Except that it's just ahead of that, which I was telling you about. The spring steel adapter 20 is typically .24 inches thick and formed from spring steel such as SAE 1095, tempered spring steel or its equivalent. Boy, that is as unambiguous as you can get, we're talking about spring steel. And then I go back to the claim and, oh, that's the word they use, spring steel. There's no ambiguity here. Well, but the claims don't teach an adapter that's anything less than a complete split. In other words, you're saying that it doesn't say complete split. Oh, well, without a complete split, total circle. I may have got my negatives crossed. But it does say circular, too. So we've got circular. Well, the circular limitation has to do with the shape of the adapter itself. But it doesn't say less than circular spring steel metal adapter. Where the specification talks about how it is formed, it talks about forming out of a flat piece of metal, being formed into a circle. And nowhere does it teach how one will join that flat piece of metal into a complete undivided circle. I guess one of the things I'm not understanding is are you saying the words spring metal adapter, that the use of that word spring is entirely to emphasize the limitation discussed in the spec of a split? It could be, but even if you don't agree with that, I think even if we're just trying to interpret what the adapter is... Wait a minute, but if we interpret it as meaning a split metal adapter, then haven't we now said it doesn't have to be made of spring steel? And I would assume that reading this specification, it would be crystal clear that this has to be formed of spring steel. Well, I think there are other places in the claims that make clear it's made of a resilient metal, and the parties don't dispute that it's made out of some form of resilient metal. The question is, have they taught how to make it out of an undivided adapter? Well, no, have they taught how to make it? Again, that's an enablement argument, counsel. That is not a claim construction argument. We don't save patentees from their poor claim drafting. Our doctrine that suggests that we will interpret a claim to uphold its validity is sort of when all other things are equal. But all things don't appear to be equal in this case. Well, every time the adapter is mentioned in the specification, it is shown in all the figures as less than a complete circle. If we agreed with you on the 050 patent, that's not true of the 831 patent, is it? Yes, it is, Your Honor. The court sloughed off the analysis of spring steel adapter by saying in two lines it's subject to the same analysis as spring metal adapter and 050, but it has a totally different spec, doesn't it? It does have a different spec, but on A169, column 4, lines 59 to 60, the specification of the 831 similarly teaches that the tubular spring steel adapter 28 includes a slot. And all three embodiments, as pictured in the figures in the 831, similarly show a complete split in the adapter. And again, the specification... That's quite different from this, which is clearly less than a complete circle, which is what you're arguing for in 050. But you don't have any diagrams or description in the 831 patent of really less than a complete circle. Even if there's a slit, they're basically in contact, aren't they? It shows us a slot that goes straight through, Judge Lurie, so it does show it in its relaxed state, so conceivably they are touching. But again, it doesn't show a complete undivided piece of metal, which is what the accused products are made of. And the prosecution history too suggests that they argued and disclaimed a complete undivided tube. They distinguished their invention from Recker's, saying the advantage of their invention is that it springs apart at the periphery of the tube. And when they made that argument, didn't they then add the limitation, not a complete circle? That's the point at which they added that limitation, correct? So why isn't that the limitation that is responsive along with those remarks? And where that limitation wasn't added, those remarks don't apply. For example, Claim 2 was never rejected. Claim 2, which is now Claim 8 before us, was never rejected. So why should we construe those remarks as applying to it? Because the remarks went to broad Claims 1 and 13, not amended Claims 1 and 13. And the test is whether a reasonable competitor could read those remarks as giving up an undivided circle. Why would they give it up? The examiner allowed Claim 2, as long as it was rewritten in independent form. So why would any reasonable prosecutor or examiner say, well, hey, let's add another limitation, even though it's been allowed in a broader capacity? That's not reasonable, is it? I mean, you tell me, is it reasonable? It's reasonable to read what they said, which is our invention allows our spring metal adapter to spring apart at the periphery, so it will work with a number of adapters. That was their invention. Nothing in the figures of the 050 patent, which has Claim 8, shows otherwise. Claim 7, which doesn't have any language that would include a complete split, the inventor admits won't operate, won't slip over the shoulder, unless it is a complete split. The specifications also say only a slight force is required to slip it over the shoulder of the connector, and the testimony is clear that it would take 75 pounds of force to slip it over the shoulder of the connector. How do you prevail in the 050 patent in light of holdings that the spec is not limited to preferred embodiments? All of these embodiments are listed as preferred. Are they not? One, two, three, four. No, Your Honor, as I read it, the first description talks about preferred, and then the fourth talks about being more preferred. But all of the embodiments are simply different ways to attach the tangs. The second embodiment distinguishes itself from the first embodiment on the grounds that instead of having six tangs, it has 13 tangs, and works with a thicker electrical junction box. But all of the figures show that there is a complete split. And again, the two places where it talks about, in figure 10 and figure 14, show the flat piece of metal from which the adapter is going to be formed. And the specification talks about the adapter being formed from a flat piece of metal. And nowhere does the specification talk about welding that piece together, or in some way turning it into something that's less than a complete circle. Okay, so let me go back. I've asked this a couple of times, but I'm not sure I really understand your answer, and I really want to. When we're construing claims, we look at claim language and we interpret it. So is your position that every embodiment in this patent shows a split, therefore judges read that split into the claims? I don't care where you put it, but shove it in there somewhere. Or is your interpretation that the word spring means split? Because you kind of have one way or the other, right? You're either going to tell us, look, the words aren't there, but you should read them in, like SIMED and other kinds of cases, or you're going to say the words are there and these are the words that you should use to interpret this. Whether you look at it as a SIMED case or whether you look at it as you're interpreting spring steel metal adapter, either way you come to the same result. This Court's cases, to be sure, do say that you don't read limitations from the specification into the claim. But there's also a long line of cases that say that when the claim, that the specification informs the meaning of the claims. And when the specification only shows one way to do something, you read the claim language, even if it were broad enough, standing alone, to encompass more, as limited by the teachings in the specification. That's the principal teaching of Phillips, and there are a number of this Court's cases that interpret claims where the language would be broad enough to encompass more, but there's nothing shown Is it the word adapter then? I'm trying to understand exactly what your argument is. I understand you're willing to embrace either way that I'm willing to hold your direction, but which word is it? Is it the word adapter, the word spring, the combined spring metal adapter, that those three words taken together would teach one of ordinary skill in the art to have a split? The three words spring steel adapter must be read as having a complete split. That's our argument. Except that that's not the plain meaning to one of skill in the art, though, right? It's not the only meaning, perhaps, but when you look at it in light of the specification, it is the plain meaning. But isn't that defined in the claims very specifically as spring steel of a certain thickness and a certain reading? I mean, we have a definition in the claims, in the specification, don't we? What you're referring to, Chief Judge Rader, I think, just simply describes what the spring steel adapter will be made from. The spring steel adapter will be formed from spring steel. So if it already meant that, it wouldn't need to say that. Except that it says it's a spring metal adapter in the claims, and now it's telling you what the metal is. It's spring steel. So the broader claim is very clearly defined by the specification. With respect, Your Honor, in column 3, line 7, it says the spring steel adapter is the spring steel adapter is typically formed from spring steel. I think if you're looking for a definition of circular metal spring adapter, it's later in that same column where it says the circular metal spring adapter has an opening that results from not forming a complete circle. That is the definition of spring steel, metal spring adapter in the claims. And that definition applies throughout the specifications consistent with all the teaching and figures in the specification. Thank you very much, Ms. Maynard. Ms. Kloon, you have still a little over two minutes remaining. Thank you, Your Honors. I would like to start with Judge Moore's questions to Bridgeport. I think it's quite clear Bridgeport did take kind of two inconsistent positions here. First, they argued that spring metal adapter, they changed their argument in this case and sort of went to this spring, which we would submit was waived because it's different than the arguments that they made below. But number two, they argued then that they also defined by implication. In either case, they do not meet their standard because clearly the plain and ordinary meaning that Bridgeport did not dispute is an adapter made of spring metal. And they do not rise to the standard of a disclaimer in the specification, nor do they rise to a disclaimer in the prosecution history. And in fact, this court held in Fuji asking the question whether or not anything in the specifications or the figures suggest that the spring metal adapter could be split. Has it actually backwards? The question is whether or not the specification makes clear that the spring metal adapter can be anything but split. That we disclaimed in some way all unsplit rings, which clearly we did not. The other point that I wanted to point out is in your questions also to her with respect to the prosecution history. She actually made a point of saying that the remarks went not to the amended claims, but to the unamended claims. And that is just factually incorrect. The amendments were made before the response to the office action. And the response to the office action then very clearly started off with the language both claims 1 and 13 have been amended to distinguish over record. They've been added a split limitation and now that entire remark was limited to the combination of the spring steel adapter as less than a complete circle. Because it's clear that the district court here erred in its claim construction in importing a limitation from the specification into the claims and narrowly construing the claims other than its plain and ordinary meaning of an adapter made of spring metal. We would ask this court to reverse and construe the claims as an adapter made of spring metal and set aside the findings of non-infringement non-wilfulness and no damages. If the court has no further questions Thank you. Thank you.